UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARRINA BYRD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action 06-00522  (HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Garrina Byrd, Annette Burns, Demera Gaskins, and Carmen Jean-Baptiste are former employees of the District of Columbia Department of Parks and Recreation ("the Department"). They bring this action against the District of Columbia ("the District") alleging that they experienced sexual discrimination and harassment while employed at the Department. Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 ("DCHRA"), the First and Fifth Amendments to the United States Constitution, and the D.C. Whistleblower Act, D.C. Code §§ 1- 615.51. The District has moved to dismiss portions of plaintiffs' third amended complaint or, in the alternative, for partial summary judgment [## 54-55]. Upon consideration of the motion, the opposition thereto, and the record of the case, the court concludes that the motion must be granted in part and denied in part.

## I. BACKGROUND

The plaintiffs were employed at the Department at various times between 2000 and 2005. They each allege that they experienced sexual discrimination and harassment while employed there. Byrd, Burns, and Gaskins allege that one individual – Darnell Thompson, who was the Director of Facilities Management – harassed them. These three plaintiffs contend that they reported the harassment to various supervisors at the Department, but that none of these supervisors addressed their complaints. They further assert that they were subjected to adverse employment actions for reporting the harassment. The fourth plaintiff, Jean-Baptiste, alleges that one of her male supervisors sexually harassed her, but the complaint does not name this supervisor. Jean-Baptiste also contends that she was harmed as a result of this conduct.

Plaintiffs' complaint includes seven counts arising out of the above allegations. Counts I-VI are brought on behalf of all four plaintiffs. Count VII is brought solely on behalf of Byrd and Jean-Baptiste.

- **Count I:** Plaintiffs allege that the District violated Title VII by subjecting them and other female employees to a hostile working environment, sexual harassment, and *quid pro quo* discrimination in violation of Title VII.

- **Count II:** Count II is identical to Count I, except plaintiffs here claim that the District violated the DCHRA.

- **Count III**: Pursuant to 42 U.S.C. § 1983, which provides a cause of action for municipal liability, plaintiffs allege that the District violated the Fifth Amendment by being deliberately indifferent to sexual harassment.

- **Count IV:** Plaintiffs allege that the District violated Title VII by retaliating against plaintiffs for complaining about sex discrimination.

- **Count V:** Count V is identical to Count IV, except plaintiffs here claim that the District violated the DCHRA.

- **Count VI**: Pursuant to 42 U.S.C. § 1983, plaintiffs allege that the District violated the First Amendment. Plaintiffs allege that their complaints about sexual harassment and a hostile work environment constituted protected speech, and that the District violated the First Amendment by retaliating against them for complaining.

- **Count VII:** This count alleges a violation of the D.C. Whistleblower Act, and it is brought on behalf of only two plaintiffs – Byrd and Jean-Baptiste. Byrd and Jean-Baptiste allege that the District violated this Act by retaliating against them for complaining about sexual harassment and a hostile working environment.

## II. ANALYSIS

The District moves to dismiss, or in the alternative for summary judgment, only some of plaintiffs' claims. The District moves to dismiss Counts I and IV with respect to Burns, Gaskins, and Jean-Baptiste on the grounds that they failed to exhaust their administrative remedies. The District moves to dismiss Counts II and V with respect to Burns and Gaskins on the grounds that they did not comply with the mandatory notice requirements of D.C. Code § 12-309 and the statute of limitations expired. The District moves to dismiss Counts III and VI on the grounds that plaintiffs do not satisfactorily allege the existence of constitutional violations. The District further asserts that, even if plaintiffs do satisfactorily allege constitutional violations, plaintiffs do not satisfactorily allege that the violations were caused by a policy or custom of the District.[1]

---

[1] Because the court must look beyond the pleadings to resolve several of the issues presented to the court, the court will treat the District's motion as one for summary judgment. *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C. Cir.1993) ("[W]hen . . . the district judge looks outside the complaint to factual matters, he or she must convert a motion to dismiss into a motion for summary judgment.").
  Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party's "initial responsibility" consists of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

**A.     Counts I and IV**

In Counts I and IV, plaintiffs assert that the District violated Title VII.  The District contends that Counts I and IV, with respect to Burns, Gaskins, and Jean-Baptiste, should be dismissed because they failed to exhaust their administrative remedies.  The District asserts that neither Burns nor Gaskins exhausted their administrative remedies because they did not file a complaint with the EEOC within 300 days of the alleged unlawful employment practice.  The District contends that Jean-Baptiste did not exhaust her administrative remedies because she did not receive a "right to sue letter" from the EEOC prior to filing suit.

Plaintiffs rejoin that, as to Gaskins' and Burns' claims, the EEOC deadline is subject to waiver, estoppel, or equitable tolling.  Plaintiffs next assert that, even if Gaskins and Burns did not file their complaint in a timely manner, these plaintiffs can rely upon Byrd's timely-filed EEOC complaint under the single-filing rule.  Lastly, with respect to Jean-Baptiste's claim, plaintiffs argue that her claim should not be dismissed because she received her right-to-sue letter after she filed suit.

---

If the moving party meets its burden, the burden then shifts to the non-moving party to establish that a genuine issue as to any material fact actually exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  To meet this burden, the non-moving party must show that "'the evidence is such that a reasonable jury could return a verdict'" in its favor.  *Laningham v. United States Navy,* 813 F.2d 1236, 1241 (D.C. Cir.1987) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  Such evidence must consist of more than mere unsupported allegations or denials; rather, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 321 n.3.  If the evidence is "merely colorable" or "not significantly probative," summary judgment should be granted.  *Anderson,* 477 U.S. at 249-50.

Because plaintiffs have not submitted a statement of genuine issues setting forth material facts, the court assumes that the facts identified by the District in its statement of undisputed material facts are deemed admitted.  LCvR 7(h).

1. *Waiver, Estoppel, or Equitable Tolling*

Plaintiffs acknowledge that neither Burns nor Gaskins filed their EEOC complaints in a timely manner, but assert that this failure to exhaust is excused due to waiver, estoppel, or equitable tolling. Plaintiffs contend that, at the very least, they must be allowed to proceed with discovery to determine whether waiver, estoppel, or equitable tolling apply. Plaintiffs have submitted a statement pursuant to Fed. R. Civ. P. 56(f), in which they detail the discovery they intend to undertake. Plaintiffs' argument is well-taken. Accordingly, the court will permit plaintiffs to conduct discovery as to whether waiver, estoppel, or equitable tolling principles apply to defeat the applicable statute of limitations.

2. *Single-Filing Rule*

Plaintiffs further assert that the court should consider Burns' and Gaskins' EEOC complaints as timely filed pursuant to the single-filing rule. The single-filing rule allows an individual plaintiff, who did not file a timely EEOC charge, to satisfy Title VII's administrative exhaustion requirement by relying on a charge that was timely filed by a similarly situated plaintiff. *See De Medina v. Reinhardt*, 686 F. 2d 997, 1013 (D.C. Cir. 1982); *Campbell v. Nat'l R.R. Corp.*, 163 F. Supp. 2d 19, 24 (D.D.C. 2001). Plaintiffs assert that Burns and Gaskins are similarly situated to Byrd, who timely-filed her EEOC charge because they: (1) were all hourly employees of the Department; (2) assert sex discrimination and were all allegedly harassed by the same supervisor; and (3) experienced discrimination within the same time frame.

The District rejoins that the single-filing rule does not apply because Byrd's EEOC charge did not assert that others suffered similar discrimination, harassment, or retaliation and thus did not put the District on notice of Burns' nor Gaskins' EEOC charge. The District further asserts that because Burns filed her own EEOC charge, the single-filing rule is inapplicable.

In the interest of judicial economy and efficiency, the court will not address the issue of whether the single-filing rule applies. As discussed *supra*, the court has determined that plaintiffs are entitled to conduct discovery to determine whether waiver, tolling, or equitable estoppel apply to Burns' and Gaskins' claims. The issue of whether the single-filing rule applies will be moot if these other doctrines apply, because these other doctrines, if applicable, will render Burns' and Gaskins' claims timely-filed. *See Campbell*, 222 F. Supp. 2d at 13 (refraining from reaching issue of applicability of single-filed rule until after completion of discovery).

### 3. *Right-to-Sue Letter*

The District asserts that Jean-Baptiste's claims should be dismissed because she did not receive her right-to-sue letter prior to filing suit. The District contends that receipt of a right-to-sue letter is a necessary precondition to bringing a Title VII claim. Plaintiffs rejoin that Jean-Baptiste's claims should not be dismissed because she has received her right-to-sue letter.[2] Plaintiffs assert that the D.C. Circuit has found that receipt by plaintiff of a right-to-sue letter after the complaint is filed cures the failure to receive the notice before filing a federal lawsuit. *See, e.g., Williams v. WMATA*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983); *Quarales v. Gen. Inv. & Dev't Co.*, 260 F. Supp. 2d 1, 17 n.13 (D.D.C. 2003). Because the D.C. Circuit has found, in no uncertain terms, that "receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court," *Williams,* 721 F.2d at 1418 n.12, this court will permit Jean-Baptiste's Title VII claims to go forward.

---

[2] At the time plaintiffs filed their initial opposition to the District's motion, Jean-Baptiste had not yet received her right-to-sue letter. Plaintiffs had argued that the court should permit her Title VII claim to go forward pending receipt of her right-to-sue letter. Subsequently, plaintiffs informed the court that Jean-Baptiste did receive her right-to-sue letter. Consequently, the court only addresses the issue of whether Jean-Baptiste can proceed with her claim even though she initiated suit prior to receiving her right-to-sue letter.

### B.     Counts II and V

In Counts II and V, plaintiffs assert the District violated the DCHRA. The District moves to dismiss Counts II and V with respect to Burns and Gaskins on two grounds: (1) they did not provide timely notice to the Mayor of their claims pursuant to D.C. Code §12-309, and (2) the one year statute of limitations expired on their claims. The District's argument is well-taken.

#### 1.  *Mandatory Notice*

The District asserts that Burns' and Gaskins' DCHRA claims must be dismissed because they did not provide the mandatory notice required by § 12-309. Section 12-309 provides that an action cannot be maintained against the District of Columbia for unliquidated damages unless, within six months after the injury or damage was sustained, plaintiffs give notice in writing to the mayor of the District about the approximate time, place, cause, and circumstances of the injury.

Plaintiffs rejoin that § 12-309 does not apply to the DCHRA. Plaintiffs contend that the DCHRA applies only to "common law" type claims, such as tort claims. Plaintiffs rely on an excerpt from a D.C. Circuit opinion in which the D.C. Circuit stated "there is no evidence that Congress envisioned itself to be acting as other than a local legislature protecting a municipality from the threat of excessive common law tort liability." Pls.' Opp'n 13 (*citing Brown v. United States*, 742 F.2d 1498, 1501-02 (D.C. Cir. 1984) (*en banc*)). Plaintiffs recognize that there is case law holding that § 12-309 applies to the DCHRA, but plaintiffs contend that these cases were wrongly decided.

Plaintiffs' argument is misguided. Plaintiffs do not cite any authority for the proposition that § 12-309 does not apply to the DCHRA. In contrast, there is authority that supports the proposition that § 12-309 does apply to the DCHRA. While the D.C. Court of Appeals has not

weighed in on this issue, at least three D.C. Superior Court judges have found that § 12-309 applies to statutory claims, including the DCHRA.  *See Cage v. District of Columbia*, No. 05-CA-0091, *4-7 (D.C. Super. Ct. June 19, 2007); *McFarlane v. New Leaders for New Sch.*, No. 04-CA-8506, *14 (D.C. Super. Ct. Nov. 10, 2005); *Descunter v. District of Columbia*, No. 04-CA-7214, *5 (D.C. Super. Ct. Mar. 1, 2005).  Furthermore, at least two courts in this district have found that § 12-309 applies to statutory claims, including DCHRA claims.  *E.g. Mazloum v. District of Columbia*, 522 F. Supp. 2d 24, 50-51 (D.D.C. 2007) (finding that police report gave necessary notice under § 12-309 for DCHRA claim); *Kennedy v. District of Columbia Gov't*., 519 F. Supp. 2d. 50, 58 (D.D.C. 2007) (finding mandatory notice provision of § 12-309 not satisfied with respect to DCHRA claim).

      Further supporting the District's argument is the fact that the plain language of § 12-309 does not distinguish between statutory claims and common law claims; the plain language indicates that it applies to all claims for unliquidated damages.  Section 12-309 states "[a]n action may not be maintained against the District of Columbia for unliquidated damages . . . unless, within six months after the injury or damage was sustained, the claimant . . . has given notice."  Accordingly, it is logical to conclude that § 12-309 applies to the DCHRA.

      Furthermore, §12-309 applies only to claims for unliquidated damages.  Thus, to the extent plaintiffs seek to recover equitable relief, §12-309 does not apply to plaintiffs' ability to obtain such relief.  *See Lively v. Cullinane*, 451 F. Supp. 999, 1000 (D.D.C. 1976) ("insofar as plaintiffs seek declaratory and injunctive relief . . . [§]12-309 is, by its terms, inapplicable.").

      Accordingly, Burns' and Gaskins' DCHRA claims – to the extent they seek unliquidated damages – are dismissed for failure to provide mandatory notice.  However, to the extent that

Burns and Gaskins seek liquidated damages and equitable relief, their claims are not dismissed for failure to provide mandatory notice. However, as discussed *infra*, these claims are dismissed because they have not been brought within the time permitted by the statute of limitations.

### 2. *Statute of Limitations*

The District argues that, regardless of whether § 12-309 applies to Burns' and Gaskins' claims, their claims are still barred by the one year statute of limitations. The District is correct.

The D.C. Code provides that a cause of action must be filed "within one year of the unlawful discriminatory act, or the discovery thereof." D.C. Code § 2-1403.16; *see also Lively v. Flexible Packaging Assoc.*, 830 A.2d 874, 890-91 (D.C. 2003) (recognizing one year statute of limitations). Burns was terminated on January 19, 2004, but did not file suit until more than two years later – on June 29, 2006. Similarly, Gaskins was terminated on March 23, 2005, and the instant suit was not filed until June 29, 2006 – more than one year later.[3] Thus, Burns' and Gaskins' DCHRA claims are untimely and must be dismissed.

**D.     Counts III and VI**

In Counts III and VI, plaintiffs allege that the District violated their First and Fifth Amendment rights, and they bring these constitutional law claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action for monetary and injunctive relief against municipalities, such as the District, for constitutional violations, but only if plaintiffs: (1) establish a predicate constitutional violation and (2) show that the constitutional violation was caused by a policy or custom of the District. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691, 694 (1978); *Baker*

---

[3] Gaskins did not join the suit until July 5, 2007. It is not relevant whether the applicable date is July 5, 2007 or the date on which the initial complaint was filed – June 29, 2006, because Gaskin's claim is untimely even under the earlier date.

*v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  The District contends that plaintiffs' § 1983 claims must fail because plaintiffs do not identify a policymaker in their complaint.  The District next asserts that these claims must fail because plaintiffs do not provide enough facts to identify an alleged constitutional violation.  Lastly, the District argues these claims must fail because plaintiffs do not satisfactorily allege that any of the District's policies or customs violated the Fifth Amendment.

**1.  *Failure to Name Relevant Policymakers***

The District argues that plaintiffs' § 1983 claims must fail because plaintiffs do not identify a policymaker, or someone with policymaking authority, in their complaint.  The District asserts that *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) stands for the proposition that plaintiffs must, in their complaint, identify a policymaker who was responsible for the policies or customs at issue.  In that case, the D.C. Circuit reversed the lower court's judgment in favor of the plaintiff on a § 1983 claim because the plaintiff had not identified anybody who "could possibly be said to hold 'final policymaking authority.'"  *Id.* (internal quotation omitted).

Plaintiffs rejoin that defendants misread *Triplett*.  Plaintiffs assert that *Triplett* does not require plaintiffs to name an individual with policymaking authority in their complaint.  Plaintiffs further assert that, in any event, their complaint identifies the policymakers who participated in or were responsible for the alleged misconduct.

Plaintiffs are correct that *Triplett* does not require them to identify an individual with policymaking authority in the complaint.  In *Triplett*, the court found that a final award under § 1983 could not stand when the plaintiff had never, throughout the course of the litigation,

identified the relevant policymaker. 108 F.3d at 1453. Thus, *Triplett* only stands for the proposition that, prior to receiving an award under § 1983, plaintiffs must identify a relevant policymaker. *Id.* It does not stand for the proposition that, at the early stages of litigation (*e.g.* pleading stage) plaintiffs must identify a policymaker. *See Amons v. District of Columbia*, 231 F. Supp. 2d 109, 115-116 (D.D.C. 2002) ("*Triplett* does not stand for the proposition that a plaintiff, at the pleading stage, must name a policymaking official in his complaint.").

### 2. *Predicate Constitutional Violation*

The District next argues that plaintiffs cannot state a § 1983 claim based on a Fifth Amendment violation because plaintiffs' complaint fails to establish a predicate constitutional violation (Count VI). The District contends that plaintiffs do not satisfactorily allege a violation of the Equal Protection clause because they do not, in their complaint, "raise a factually supported inference of intent to harass." Def.'s Br. 11.[4]

In response, plaintiffs assert that the D.C. Circuit has recognized a constitutional right to be free from sex discrimination and that this right underlies their Fifth Amendment claim. Plaintiffs further assert that their claim should survive because their complaint provides sufficient factual detail as to how the District violated their constitutional rights.

Plaintiffs' complaint satisfactorily alleges a constitutional violation. Plaintiffs allege the District committed a constitutional violation by sexually harassing them. This is a valid basis on

---

[4] The District also contends that plaintiffs do not satisfactorily allege a violation of the Due Process clause because that clause does not guarantee municipal employees a workplace that is free of unreasonable risks of harm. This argument misses the mark. The District bases this argument on *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), which addressed the issue of whether governments have a constitutional obligation to provide minimal levels of safety and security in the workplace. Plaintiffs here do not base their complaint on allegations that their safety and security were threatened.

which to allege a constitutional violation – the Supreme Court has held that sex discrimination may violate the Constitution. *Davis v. Passman*, 442 U.S. 228 (1979); *Craig v. Boren*, 429 U.S. 190 (1976). Furthermore, plaintiffs' claims involve sexual harassment, and the Supreme Court has specified that, "[w]ithout question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (discussing Title VII); *see also Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997) ("sex discrimination and sexual harassment in public employment violate the Equal Protection clause of the Fourteenth Amendment."). Thus, sexual harassment may violate the constitution.

Furthermore, plaintiffs' complaint provides enough factual detail to "raise a factually supported inference of intent to harass." Def.'s Br. 11. Plaintiffs' complaint includes the following factual allegations:

- Each time that Byrd's term employment neared its end date, Thompson escalated his demands for sexual favors in exchange for renewing her employment contract. Thompson eventually required Byrd to have sexual intercourse with him or lose her position with the Department. Third Am. Compl. ¶ 22.

- Burns was subjected to routine sexual harassment by Thompson, including, but not limited to, his sexual assault of Burns when she was eight months pregnant in which he pushed her against a table and touched and kissed her. *Id.* ¶ 38.

- Gaskins was subjected to routine and extreme sexual harassment by Thompson, including, but not limited to, sexual intercourse and other physical harassment, such as groping and kissing, as well as verbal harassment that occurred on a regular basis. *Id.* ¶ 59.

- Jean-Baptiste was subjected to sexual harassment including, but not limited to, her supervisor pointing to Jean-Baptiste's vaginal area and stating that he wanted "some of that for my birthday." *Id.* ¶ 70.

These factual allegations are more than sufficient to raise a factually supported inference of intent to harass. Accordingly, the court cannot dismiss plaintiffs' complaint for failure to demonstrate intent to harass.

### 3. *Policies or Customs*

The District argues that plaintiffs do not satisfactorily allege that any of the District's policies or customs violated the Fifth Amendment. According to the District, the complaint, fairly read, at most charges that two employees were responsible for the harassment at issue, and that the actions of so few employees do not amount to a policy or custom of the District. The District further argues that, to the extent plaintiffs allege that there was a policy or custom of deliberate indifference to complaints of sexual harassment, plaintiffs do not allege any facts that illustrate such deliberate indifference. Plaintiffs rejoin that their complaint satisfactorily alleges that the District was deliberately indifferent to the existence of sexual harassment. Plaintiffs' argument is well-taken.

The D.C. Circuit has held that to state a § 1983 claim due to deliberate indifference, "plaintiffs must establish that the need for more or different training or supervision was so obvious and the inadequacy so likely to result in a violation of constitutional rights that policymakers can be said to have been deliberately indifferent to the need." *Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998). The D.C. Circuit has warned that this is no easy task, and that plaintiffs must "demonstrate a close link between the alleged injury and the alleged deficiency in training." *Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996).

Plaintiffs' complaint is sufficient. Plaintiffs make clear their allegation that the need for training and supervision regarding sexual harassment was obvious because of the "number and

frequency of complaints made to various District of Columbia managers." Pls.' Opp'n 9-10. Plaintiffs contend that, despite the obvious need for training, the District never trained its employees about sexual harassment and never prevented its employees from engaging in sexual harassment. Plaintiffs further assert that, even though there were numerous complaints of sexual discrimination and harassment, these complaints went unheeded. Thus, plaintiffs adequately allege that the District was deliberately indifferent to the alleged constitutional violations. *See Powers-Bunce v. District of Columbia,* 479 F. Supp. 2d 146, 155-56 (D.D.C. 2007).[5]

### 4. *First Amendment*

Plaintiffs assert that the District retaliated against them for exercising their First Amendment rights (Count VI). The District rejoins that plaintiffs' First Amendment claim is deficient, but offers no substantive argument in support of its assertion. Accordingly, the court will permit plaintiffs' First Amendment claim to proceed.

### III.  CONCLUSION

For the foregoing reasons, the District's motion to dismiss portions of plaintiffs' third amended complaint or, in the alternative, for partial summary judgment [## 54-55], is **DENIED** in part and **GRANTED** in part.

Henry H. Kennedy, Jr.<br>United States District Judge

**Dated: March 13, 2008**

---

[5] The District also argues that plaintiffs' claims are "even more tenuous if they intend to allege that the [Department's] policies and procedures on which their constitutional claims depend have the status of District law" because "an agency protocol is 'not itself a regulation whose violation by itself may support a finding of negligence.'" Def.'s Mot. 9-10 (*citing District of Columbia v. Henderson*, 710 A.2d 874, 877 (D.C. 1998)). However, plaintiffs do not allege anywhere in their complaint that the constitutional violations were caused by specific, pre-established policies or procedures.