UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARRINA BYRD, ANNETTE BURNS,
DEMERA GASKINS, and CARMEN
JEAN-BAPTISTE,

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 06-0522 (HHK)(AK)

**MEMORANDUM OPINION**[1]

Pending before the Court are Plaintiffs' Motion for Leave to Take Depositions [92], Defendant's Opposition [96] and Plaintiffs' Reply [97]. Also pending before the Court is Defendant's Emergency Motion for Protective Order and to Quash Notice of Depositions [93] and Plaintiffs' Opposition [95].[2] Upon consideration of the record and memoranda submitted by the parties, for reasons set forth below, Plaintiffs' Motion for Leave to Take Depositions is **granted**, and Defendant's Motion for Emergency Protective Order and to Quash Notice of Depositions is **denied-in-part and granted-in-part**.

---

[1] United States District Judge Henry H. Kennedy, Jr. referred this case to the undersigned Magistrate Judge for all matters relating to discovery or discovery-related disputes, pursuant to Local Civil Rule 72.2(a). (*See* Order [98] dated 4/14/09.)

[2] Due to the similar nature of the motions, the Court reviews Plaintiffs' and Defendant's requests together.

**I.       Background**

Plaintiffs in this case, Garrina Byrd, Annette Burns, Demera Gaskins, and Carmen Jean-Baptiste, are former employees of the Department of Parks and Recreation ("DPR"), who allege that they experienced sexual discrimination and harassment while employed at DPR, and then were terminated as a result of reporting it and/or resisting the sexual harassment. (Pls.' Mem. Supp. Mot. at 1-2.) Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01 ("DCHRA"), the First and Fifth Amendments of the United States Constitution, and the D.C. Whistleblower Act, D.C. Code §§ 1-615.51. Plaintiffs allege that the sexual harassment occurred and that Defendant "exhibit[ed] a deliberate indifference to the harassment and allow[ed] it to continue." (*Id.* at 1.)

On March 30, 2009, Plaintiffs moved for leave to take additional depositions over the presumptive ten permitted by Fed. R. Civ. P. 30. (*Id.* at 3-4.) Defendant filed an opposition to Plaintiffs' motion on April 13, 2009, objecting that several of the proposed depositions were cumulative and duplicative. (Def.'s Opp'n at 2-3.) Plaintiffs filed a Reply on April 16, 2009. (Pls.' Reply at 1-3.)

In a separate motion, filed by Defendant on April 6, 2009, Defendant moved for a protective order to prevent Plaintiffs from taking the depositions of Neil Stanley and Neil Albert, arguing that they are high-ranking officials. (Def.'s Mem. Supp. Mot. at 2-3.) Defendant also seeks to quash Plaintiffs' Notice of Depositions, claiming that the quantity of depositions and the consecutive days on which they are scheduled are too burdensome. (*Id.* at 5.) On April 8, 2009, Plaintiffs filed an opposition to Defendant's motion claiming (1) that Defendant had not sufficiently established that

Stanley or Albert are high-ranking officials or that they should not be granted a protective order if they are, and (2) that the depositions were scheduled so close together because of an impending discovery deadline and due to the parties' difficulty in determining mutually agreeable times. (Pls.' Opp'n at 9-12.)

**II.     Legal Standards**

In general, "[a] party may . . . depose any person, including a party, without leave of the court . . . ." FED. R. CIV. P. 30(a)(1). The Federal Rules, however, limit parties to ten depositions without leave of the court or stipulation of the parties. FED. R. CIV. P. 30(a)(2)(i). If a party seeks additional depositions without the consent of the other party, "the court must grant leave to the extent consistent with Rule 26(b)(2)." FED. R. CIV. P. 30(a)(2). Rule 26(b)(2) states that courts must limit the depositions if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2).

Pursuant to Federal Rule of Civil Procedure 26(c), a party may move for and a court may issue, for good cause, a protective order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). In light of undue burden considerations, courts have recognized the need for protective orders for certain high-ranking officials. *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 1, 5 (D.D.C. 1998) (explaining that protective

orders should be granted for certain high-ranking officials because they "should not be unduly interrupted or burdened with depositions").

### III.   Discussion

####       A.   Plaintiffs' Motion for Leave to Take Depositions in Excess of the Presumptive Limit

On March 30, 2009, Plaintiffs moved for leave to take additional depositions in excess of the presumptive ten depositions permitted under Rule 30. (Pls.' Mot. at 1-2.) Plaintiffs claim that they only seek leave from the Court after "trying in earnest to schedule [the] depositions since mid January 2009" with Defendant. (*Id.* at 5.) It is further argued that the depositions "are sought in order to discover facts relevant to proving each of the Plaintiffs' claims." (*Id.* at 3.) In opposition, Defendant claims that several of the proposed depositions are cumulative and duplicative.[3] (Def.'s Opp'n at 2-3.) After reviewing the pleadings, the Court will rule on the following depositions: Arnita Bonner, Leslie Green and/or DeCarlos Washington, Deborrah Jackson.[4]

---

[3] In Defendant's April 6, 2009 motion for a protective order to quash Plaintiffs' notice of depositions, Defendant stated that "[o]ther than the depositions of . . . Albert and . . . Stanley . . . the District does not object to [the other disputed] depositions and will continue to work towards scheduling with plaintiffs." (Def.'s Mot. at 5.) Despite the discrepancy in its objections, the Court will consider Defendant's objections to these depositions as they appear in Defendant's April 13, 2009 opposition to Plaintiffs' motion. (*See* Def.'s Opp'n.)

[4] Defendant does not object to Plaintiffs deposing Margarita Cruz, Tonya Kemper, Darnell Thompson, Kennedy Khabo, Rodney Weaver and Solomon Robinson. Defendant previously agreed to the depositions of Cruz, Kemper, Thompson and Khabo, Robinson has already been deposed and Defendant stated no objections to the deposition of Weaver. (*See* Def.'s Opp'n.) Plaintiffs also withdraw their motion to depose Harold Houston. (*See* Joint Mot. [100] at 2 fn.1.) Houston's deposition was taken on June 9, 2009. (*Id.*)
   Defendant objects to the proposed depositions of Neil Stanley and Neil Albert, primarily on the grounds that they should be protected as high-ranking officials. *See* Part III, B, *infra*. Because the Court concludes that there are facts that may be known only to Stanley and Alpert, their depositions are relevant and are not cumulative or duplicative.
   Plaintiffs had also originally intended to depose Shawniqua Ottley and Maytiller Evans, as indicated in their March 30, 2009 motion. (Pls.' Mot. at 4-5.) However, in their April 16, 2009 Reply, Plaintiffs stated that they no longer wish to depose Ottley and Evans. (Pls.' Reply at 3.)

The Court concludes that Plaintiffs have sufficiently shown that none of the contested depositions are cumulative or duplicative or imposes a burden that outweighs their likely benefit and will therefore grant Plaintiffs' motion for leave to take all of the proposed depositions. The contested depositions are discussed individually below:

    i.    <u>Arnita Bonner</u>

Bonner was the Human Resources Director at DPR during the time period when certain alleged instances of sexual harassment and a subsequent investigation occurred. Plaintiffs argue that Bonner's deposition is necessary because she "possess[es] knowledge of the internal investigations (or lack thereof) into the sexual harassment complaints of Plaintiffs Byrd, Burns, and/or Gaskins." (Pls.' Mot. at 4.) Defendant argues that, although an internal investigation did occur regarding Plaintiff Byrd's allegations, Plaintiffs were already given copies of documents relating to the investigation, such as transcripts and a preliminary report, and Bonner "had no role in this independent investigation." (Def.'s Opp'n at 4.)

Notwithstanding Defendant's objections, Bonner may have knowledge of the investigation and what actions Defendant took in response to some of Plaintiffs' complaints. For example, Plaintiffs assert that in a prior deposition of Richelle Marshall,[5] Marshall testified that Bonner initiated the investigation. (Pls.' Reply at 3; Pls.' Reply Ex. 3, Marshall Dep. at 16.) Marshall further testified that although Bonner told her that she hired an investigator outside of the agency, she was unsure as to Bonner's motives for doing so. (Pls.' Reply Ex. 3, Marshall Dep. at 16.) Given Marshall's testimony, Bonner is ostensibly in a position to testify about aspects of the investigation

---

[5] Richelle Marshall is the current Human Resources Director at DPR and one of Defendant's 30(b)(6) designees. (Pls.' Reply at 3.)

and Plaintiffs should be given an opportunity to pursue this line of questioning at a deposition. A copy of the preliminary report or testimonies from the investigation may not reveal the same insights as questioning Bonner herself. Furthermore, Bonner, who was also the Human Resources Director at the time of Gaskins' and Burns' employment, may have relevant information as to whether there was an investigation into their complaints. Therefore, given that Bonner's deposition may be relevant to Plaintiffs' discovery and that Defendant failed to demonstrate that her testimony would be cumulative or duplicative, the Court will permit Plaintiffs to depose Bonner.

### ii. Leslie Green and/or DeCarlos Washington[6]

Green and Washington worked for the welfare-to-work program that placed Plaintiffs Burns and Byrd at DPR. Plaintiffs claim that Washington and Green's depositions are necessary because Byrd complained to them about the sexual harassment and they then "prepared a report of her complaint and presented it to Mr. Albert." (Pls.' Mot. at 3.) Defendant argues that there is no indication in the record that Green or Washington have knowledge of the claim "other than their rote task of purportedly typing a report of Plaintiffs' alleged complaints." (Def.'s Opp'n at 3.) It is further argued that Plaintiffs already have a copy of the report and that neither Green nor Washington "have any-first hand knowledge of the facts." (*Id.*)

The Court concludes that Green and Washington's depositions are relevant and are not cumulative or duplicative. Plaintiffs argue that Green and Washington may have done more than just the "rote task" of preparing a report. (Pls.' Mot. at 5.) According to Plaintiffs, Green and

---

[6] Plaintiffs originally requested either Green or Washington's deposition. (Pls.' Mot. At 3.) In their Reply, Plaintiffs requested that the Court grant leave for both of their depositions. (Pls.' Reply at 5-6.) Plaintiffs have stated that they will only depose Green if they find that Washington's deposition does not provide the type of information they seek to discover. (*Id.*)

Washington met with Albert to deliver and potentially discuss the report. (*Id.*) It is further claimed that Green and Washington discussed the harassment complaint with Burns. (*Id.*) Therefore, Green and/or Washington can potentially speak to Albert's reactions to the harassment claim, corroborate Burns' assertions and discuss the preparation of their report. They may also be able to confirm the existence of the report, which "every DPR employee or former employee deposed to date has denied having ever seen [the] report." (*Id.* at 6.) For the above reasons the Court finds their depositions are relevant and not cumulative or duplicative. The proposed depositions of Green and Washington will therefore be permitted.

   iii. <u>Deborrah Jackson</u>

Jackson is the President of DPR's American Federation of Government Employees (AFGE) Union. Plaintiffs assert that Jackson's deposition is necessary because she "received multiple complaints from female employees . . . regarding sexual harassment" and reported the complaints to Mr. Albert and the D.C. City Council. (Pls.' Mot. at 3-4.) Defendant claims that Jackson's testimony will be cumulative and duplicative of Slyvia Gwathmey, a Union Steward employed during the relevant time period who was already deposed. (Def.'s Opp'n at 3.)

  The Court concludes that Jackson's deposition may not be cumulative or duplicative. Based on Gwathemy's deposition, Plaintiffs contend that Jackson took on the leading role in repeatedly informing Albert and/or Stanley about the complaints and requesting that the person alleged to have harassed plaintiffs be terminated. (Pls.' Reply at 6; Pls.' Reply Ex. 4, Gwathemy Dep. at 22, 34-35, 38-40.) Plaintiffs assert that Jackson also wrote a letter to Kathy Patterson of the D.C. City Council complaining about Albert and Stanley's lack of response. (Pls.' Reply at 6-7; Pls.' Reply Ex. 5 at 1-4.) Furthermore, Plaintiffs point to Gwathmey's deposition testimony that her recollection

regarding some of the details at the meetings that included Jackson and Albert were cloudy, that Jackson and Albert may have met alone and that Jackson would be a more appropriate person to depose on the contents of the City Council letter. (Pls.' Reply at 6-7; Pls.' Reply Ex. 4, Gwathemy Dep. at 22, 34-35, 38-39, 69-70.) In particular, Plaintiffs suggest that Jackson, and not Gwathmey, may know the contents of Jackson's private meetings with Albert and the motive behind and events leading up to writing the City Council letter, and that Jackson may have valuable information regarding whether there were other employees, not a party in this case, who complained about sexual harassment. (Pls.' Reply at 7.) As Plaintiffs have demonstrated that relevant information may be known only to Jackson, her deposition will also be permitted.

Finally, the Court concludes that the burdens associated with the contested depositions do not outweigh their likely benefits. The burdens placed on Defendant will most likely be minor, as none of the depositions are anticipated to take a full day. (Pls.' Mot. at 6.) Furthermore, Plaintiffs assert that they will assume the burden of locating and serving subpoenas to all the people to be deposed, in particular the witnesses who no longer work at DPR. (*Id.*) In contrast, all of the proposed depositions have a likely benefit to Plaintiffs' ability to discover information relevant to their claims, which the Court finds outweighs the burden of attending the depositions.[7] Accordingly, the depositions of Arnita Bonner, Leslie Green, DeCarlos Washington and Deborrah Jackson may be taken by Plaintiffs.

---

[7] Defendant shall cooperate with Plaintiffs and make a good faith effort in assisting Plaintiffs in locating the witnesses.

**_____B.     Emergency Motion for Protective Order Regarding High-Ranking Officials**

A protective order for a high-ranking official should be granted if the court determines that (1) the individual is high-ranking and (2) applying a balancing test, the movant's concern of harm to the official outweighs "the adversary's significant interest in preparing for trial." *See Low v. Whitman*, No. 00-2793 (JMF), 2002 U.S. Dist. LEXIS 10101, at *3 (D.D.C. 2002) (citing *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001)). Although no standard has been established for determining if an official is high-ranking, courts have held that the Mayor of the District of Columbia, United States Senators, the General Counsel to United States House of Representatives, the Attorney General of the United States and certain high administrative heads are high-ranking officials for this purpose. *See Bardoff v. United States*, 628 A.2d 86 (D.C. 1993); *Davis v. United States*, 390 A.2d 976 (D.C. 1978); *Alliance for Global Justice v. District of Columbia*, No. 01-00811 (PLF/JMF), 2005 U.S. Dist. LEXIS 15190 (D.D.C. July 29, 2005).

Unless the movant can show that the need for the protective order is "sufficient to overcome plaintiffs' legitimate and important interests in trial preparation," high-ranking officials are subject to deposition. *Alexander*, 186 F.R.D. at 1 (citing *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985)). In making such determinations, courts look to whether the official has *"some* personal knowledge about the matter," *Alliance*, 2005 U.S. Dist. LEXIS 15190, at *5 (emphasis in original), and if the testimony will be "relevant and material" to the suit, *Davis*, 390 A.2d at 981. Additionally, the movant must "make a specific demonstration of facts to support [its] request for the protective order and may not rely on conclusory or speculative statements concerning the need for a protective order." *Alliance*, 2005 U.S. Dist. LEXIS 15190, at *6. Lastly, the party seeking the deposition must make "a showing that the information cannot be obtained elsewhere."

*Id.*; *see also Low*, 2002 U.S. Dist. LEXIS 10101, at *5 (explaining that protective orders should be granted to prevent "fishing for information").

Although "common sense seems to suggest that administration heads . . . should not be called to testify personally unless a clear showing is made that such a proceeding is essential to prevent prejudice or injustice to the party who would require it," *Davis*, 390 A.2d at 981 (citing *Wirtz v. Local 30, Int'l Union of Operating Eng'rs*, 34 F.R.D. 13 (S.D.N.Y. 1963)), protective orders that completely prohibit a deposition should be granted only as an "extraordinary measure which should be resorted to only in rare occasions," *Jennings*, 201 F.R.D. at 275.

On April 6, 2009, Defendant moved for a protective order to forbid the depositions of Neil Stanley, former DPR Director and current District Deputy Mayor, and Neil Albert, former DPR Director and current General Counsel for the District's Department of Youth and Rehabilitation Services ("DYRS"). (Def.'s Mot. at 2-3.) Defendant asserts that both Stanley and Albert in their former and current positions were "an administrative head and high government official," and as such they should qualify as high-ranking officials. (*Id.* at 3.) In lieu of appearing for a deposition, Defendant has offered written statements from Stanley and Albert. (*Id.* at 4.) The written statements would address "their knowledge of the Plaintiff's allegations." (*Id.*) Additionally, Defendant argues that lower ranking employees, to which both Stanley and Albert delegated the day-to-day responsibilities, would be an appropriate alternative source for the information. (*Id.*) Furthermore, these lower ranking employees would "not suffer the same burdens and hardships as would a high government official by giving personal testimony at a deposition." (*Id.*)

Plaintiffs challenge Defendant's characterizing Stanley or Albert as high-ranking government officials. (Pls.' Opp'n at 9-11.) Alternatively, Plaintiffs claim that even if the Court were to

determine that Stanley and Albert's current duties qualified them as high-ranking officials, they must still be deposed because "they possess personal knowledge of facts important to the case that cannot be obtained from other sources." (*Id.* at 3, 10.) In support of their claim, Plaintiffs argue that not only did Stanley and Albert have first-hand knowledge of the sexual harassment issues through conversations with certain Plaintiffs themselves, but that they received information from other individuals, including union representatives, who complained "about rampant sexual harassment at DPR." (*Id.* at 4-5.) Plaintiffs assert that only by taking Stanley and Albert's depositions may it be determined: "at what time they took any actions; . . . what corrective action if any they implemented; . . . and why any such actions were taken and why others were not." (*Id.* at 5.)

The Court concludes that Defendant has failed to demonstrate that either Stanley or Albert are high-ranking officials who should be protected from the burdens of being deposed. First, given that the concerns associated with deposing high-ranking officials have to do with the potential interruption of current duties, it is the current position, and not any former position, that is evaluated. *See Alexander*, 186 F.R.D. at 5. Secondly, courts that have issued protective orders for high-ranking officials have done so in the cases of Senators, the District's Mayor, General Counsel for the House of Representatives and other high-ranking administrative heads. *See Bardoff*, 628 A.2d 86; *Davis*, 390 A.2d 976; *Alliance*, 2005 U.S. Dist. LEXIS 15190. Defendant has not demonstrated why the positions of Deputy Mayor and General Counsel for a District Department are of such importance as to be viewed in the same light as these offices. There is no indication that failure to perform their particular duties for the length of a deposition would create any hardship or unreasonable burden.

However, even if Stanley and Albert were to be considered high-ranking officials, they would still be subject to deposition because of their potential personal knowledge of the facts in this case.

Both Stanley and Albert may have been aware of Plaintiffs' asserted claims. Plaintiffs allege that three of the Plaintiffs, Burns, Gaskins and Jean-Baptiste, complained to Stanley and/or Albert. (Pls. Opp'n at 4-5.) Additionally, Plaintiffs point to a letter from Deborrah Jackson, Local 2741 Union President, to a D.C. Council member, and testimony from Ms. Gwathmey, Union Steward, as indicating that Jackson met and discussed the alleged sexual harassment problems with Albert and repeatedly reported problems to Stanley. (Pls.' Opp'n Ex. 1 at 1-4; Pls.' Opp'n Ex. 5, Gwathmey Dep. 22, 25-26.)

Plaintiffs seek to establish Defendant's neglect of and deliberate indifference to their sexual harassment claims. The testimony of those Directors who may have had first-hand knowledge of the asserted harassment claims might serve to bolster Plaintiffs' claims of deliberate indifference. For example, the Directors may have information and insights into why each of the Plaintiffs was fired and Plaintiffs should be permitted to examine the Directors on these and other relevant issues.

Finally, none of Defendant's proposed alternatives would allow for full discovery of the information sought. Stanley and Albert likely have information that no other source could provide since only they can testify to their own motives. Furthermore, written testimonies may not allow for the same in-depth probing that deposition testimony and examination can provide.

Therefore, the Court will deny Defendant's motion for a protective order with respect to Stanley and Albert.

### C. Emergency Motion to Quash Plaintiffs' Notice of Depositions

Defendant also moves the Court to quash Plaintiffs' Notice of Depositions. (Def.'s Mot. at 5.) The Notice of Depositions, dated March 30, 2009, sets forth dates and times for seventeen

separate depositions to occur over nine consecutive days, with one deposition scheduled in the morning and one in the afternoon.[8]  (Def.'s Mot, Ex. 1 at 1-2.)  Defendant argues that only the initial four depositions were mutually agreed upon, and that the subsequent eleven depositions were arbitrarily noticed and conflict with obligations already on Defendant's counsel's calendar.  (Def.'s Mot. at 5.)  Defendant, therefore, moves the Court to quash the subsequent eleven depositions to allow Defendant to work with Plaintiffs towards scheduling mutually convenient dates.  (*Id.*)

In opposition, Plaintiffs argue that they scheduled the depositions on the consecutive days because of an impending discovery deadline and that Defendant repeatedly failed "to provide the witnesses at mutually agreeable dates and times over the course of the past six months."  (Pls.' Opp'n at 11.)  Plaintiffs further claim to have sent over twenty email messages since January 7, 2009 "to schedule depositions and/or secure the last known addresses of individuals."  (*Id.* at 12.)  Given the then impending April 21, 2009 deadline set by the trial court and persistent attempts by Plaintiffs' counsel, Plaintiffs argue that the consecutive dates noticed were not arbitrary.  (*Id.*; *see also* Sch. Order [88], Jan. 13, 2009.)

The Court concludes that defending seventeen depositions scheduled on nine consecutive days would pose an undue burden on Defendant.  However, given Plaintiffs' frequent attempts to schedule the depositions and the impending discovery date, Defendant should have known that such a notice of depositions was inevitable.  In light of the now passed dates noticed for deposition and

---

[8] The dates noticed, from April 4, 2009 to April 20, 2009, have already passed.

the close of discovery, the parties shall in good faith schedule mutually agreeable depositions dates to be completed by July 23, 2009.[9]

IV.     **Conclusion**

Plaintiffs' Motion for Leave to Take Depositions will be granted and the Defendants will make a good faith effort in providing witness contact information to Plaintiffs. Defendant's Emergency Motion for Protective Order for Neil Stanley and Neil Albert will be denied. The Court will grant the Defendant's Emergency Motion to Quash Notice of Depositions, said notice being moot as a result of the Court's ruling in this memorandum opinion. The Court urges all parties to work in good faith in scheduling all remaining depositions authorized by this Court. The Court will issue an Order consistent with this Memorandum Opinion.

DATED: June 25, 2009                    _____/s/_____
                                        ALAN KAY
                                        UNITED STATES MAGISTRATE JUDGE

---

[9] Pursuant to the June 22, 2009 Order [102] granting the Parties' Joint Motion to Modify the Scheduling Order, the ordered depositions are to be completed four weeks from the date of this Memorandum Opinion and Order. (*See* Order [102], June 22, 2009 at 1-2.)

14